**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF INDIANA**
**FORT WAYNE DIVISION**

| | | |
|---|---|---|
| ROBERT DeVAN BOOKER, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CAUSE NO.: 1:06-CV-166-TS |
| | ) | |
| MARK DESHAIES, and | ) | |
| BENJAMIN TRUESDALE, | ) | |
| | ) | |
| Defendants. | ) | |

**OPINION AND ORDER**

The Plaintiff, Robert DeVan Booker, has sued the Defendants, Mark Deshaies and

Benjamin Truesdale, officers of the Fort Wayne Police Department, for excessive force. This

matter is before the Court on the Defendants' unopposed motion for summary judgment [DE 33]

on those claims.

**BACKGROUND**

On April 21, 2006, the Plaintiff filed a Complaint pursuant to 42 U.S.C. § 1983. The

Plaintiff alleged that the Fort Wayne Police Department, the New Haven Police Department, and

officers Deshaies and Truesdale were responsible for violating his constitutional rights. He

alleged violations of his Fourth Amendment right to be free from excessive force during arrest

and his right to receive necessary medical treatment. Because he was incarcerated when he filed

the Complaint, the Court screened the case pursuant to 28 U.S.C. § 1915A. During this

screening, the Court determined that the Complaint set forth a claim that officers Deshaies and

Truesdale used excessive force during their arrest of the Plaintiff, but that the Complaint did not

support a claim that the officers were deliberately indifferent to his medical needs. Neither did

the Complaint set forth any viable claims against the governmental entities, and they were dismissed from the suit.

On September 21, 2006, Defendants Deshaies and Truesdale answered the Complaint. On May 16, 2007, the Defendant officers moved for summary judgment on the remaining excessive force claim. Along with their motions, the Defendants filed the necessary notice to the Plaintiff as a *pro se* litigant pursuant to *Timms v. Frank*, 953 F.2d 281, 285–86 (7th Cir. 1992), and *Lewis v. Faulkner*, 689 F.2d 100 (7th Cir. 1982). The Plaintiff did not file a response.

## SUMMARY JUDGMENT STANDARD

The Federal Rules of Civil Procedure mandate that motions for summary judgment be granted "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). Rule 56(c) further requires the entry of summary judgment, after adequate time for discovery, against a party "who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

A court's role is not to evaluate the weight of the evidence, to judge the credibility of witnesses, or to determine the truth of the matter, but instead to determine whether there is a genuine issue of triable fact. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249–50 (1986); *Doe v. R.R. Donnelley & Sons Co.*, 42 F.3d 439, 443 (7th Cir. 1994). To determine whether any genuine issue of fact exists, the court must pierce the pleadings and assess the proof as presented in depositions, answers to interrogatories, admissions, and affidavits that are part of the record.

Fed R. Civ. P. 56(c), Advisory Committee Notes, 1963 Amendments. The party seeking summary judgment bears the initial burden of proving there is no genuine issue of material fact. *Celotex*, 477 U.S. at 323. In response, the nonmoving party cannot rest on bare pleadings alone but must use the evidentiary tools listed above to designate specific material facts showing that there is a genuine issue for trial. *Id.* at 324; *Insolia v. Philip Morris Inc*., 216 F.3d 596, 598 (7th Cir. 2000). A material fact must be outcome determinative under the governing law. *Insolia*, 216 F.3d at 598–99. Although a bare contention that an issue of fact exists is insufficient to create a factual dispute, the court must construe all facts in a light most favorable to the nonmoving party as well as view all reasonable inferences in that party's favor. *See Bellaver v. Quanex Corp*., 200 F.3d 485, 492 (7th Cir. 2000). The court must consider the evidence as a jury might, "construing the record in the light most favorable to the nonmovant and avoiding the temptation to decide which party's version of the facts is more likely true." *Shepherd v. Slater Steels Corp*., 168 F.3d 998, 1009 (7th Cir. 1999); *see also Payne v. Pauley*, 337 F.3d 767, 770 (7th Cir. 2003) (noting often stated proposition that "summary judgment cannot be used to resolve swearing contests between litigants"). The court may not grant summary judgment "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248.

Pursuant to local rule, the Court is to assume that the facts claimed by the moving party and supported by admissible evidence are admitted to exist without controversy, except to the extent such facts are controverted in a "Statement of Genuine Issues" filed in opposition to the motion and supported by admissible evidence. N.D. Ind. L.R. 56.1(b).

## STATEMENT OF FACTS

The following facts are supported by admissible evidence and are admitted to exist without controversy.

On August 26, 2005, Officers Deshaies and Truesdale were patrolling near downtown Fort Wayne in their capacities as Fort Wayne Police Officers. Around 1:18 AM, they noticed a white Pontiac on Wayne Street cross the center line. They then saw the car make an extremely wide right turn onto Monroe Street, where it again crossed into the other lane of traffic. The Plaintiff was the driver of that white car.

On Washington Boulevard, Officers Deshaies and Truesdale pulled their squad car behind the white Pontiac and flashed their red and blue emergency lights. The Plaintiff abruptly pulled to the right and stopped, and the officers stopped behind him. The Plaintiff began to get out of the car before the officers had a chance to fully assess the situation. Because police officers consider traffic stops to be dangerous, particularly when the driver gets out of the car, Officer Truesdale told the Plaintiff to stay in the car. The Plaintiff complied, but as the officers began to get out of the squad car, he again attempted to exit his car. As the officers approached the Plaintiff's car, he got out and locked the doors. He appeared agitated, stumbled, slurred his words, and did not listen to the officers' directions.

The officers could smell alcohol on the Plaintiff breath, observed his watery and bloodshot eyes and his dilated pupils. The officers believed that the Plaintiff was drunk, and were concerned that he would wander into oncoming traffic during the stop. Officer Truesdale told the Plaintiff that he was going to place him in handcuffs for officer safety. The Plaintiff cooperated in the placement of the cuffs behind his back. Officer Truesdale then escorted the

Plaintiff to the police car as Deshaies walked next to them. The Plaintiff stumbled before reaching the car, but was able to get into the back seat and sit.

After sitting in the squad car for ten minutes, the Plaintiff began to complain about pain in his back. He told the officers that he had a back problem from a prior injury and that he was always in pain. When the officer asked if moving the handcuffs to the front would help, the Plaintiff indicated that it would. The officers opened the door and the Plaintiff moved his feet to the outside of the car. He appeared to have no problem moving on his own accord. Officer Truesdale moved the Plaintiff's cuffs to the front, double locking them so they could not get tighter if the Plaintiff struggled. Neither Officer Deshaies or Officer Truesdale struck the Plaintiff.

The officers planned to administer a portable breath test to determine the Plaintiff's alcohol level. However, the Plaintiff did not cooperate with the officers' efforts to administer the test, and asked to be taken "downtown." The officers interpreted this to mean that the Plaintiff wanted to go to the Allen County Confinement Facility (the jail).

Officer Truesdale drove the squad car to the lock-up at the jail, which is less than one mile from the location of the traffic stop. It took less than three minutes for the car to make the trip. Once they arrived, the officers gave the Plaintiff his cane to walk from the entrance to the property window check-in. The Plaintiff did not appear to have any trouble walking to the check-in and made no complaints. However, after he checked his personal property and was told he was going to take a breathalyzer in a different room, the Plaintiff began crying out in pain, flinching, claiming that he could not walk, and slumping to the floor. He asked the officers to get a wheel chair. He also asked for a mat to lie on. Finally, he demanded to be taken to the hospital.

An ambulance arrived at the jail and emergency technicians lifted the completely limp Plaintiff onto a gurney. The Plaintiff told the technicians that he had back problems, but would not elaborate on his medical history or state the medications he was taking. The ambulance took the Plaintiff to the St. Joseph Hospital. The Plaintiff was uncooperative with the medical staff, yelled at staff and other patients, ignored requests to stop yelling, and cried out in pain whenever asked a question; he was particularly loud when asked if he would allow the hospital to draw blood for a blood alcohol test. The Plaintiff also refused medication that the physician attempted to give him. The Plaintiff would not sign a consent for chemical tests, the intake agreement, or the hospital's HIPPA or discharge forms.

The emergency room physician discharged the Plaintiff to the care of the officers. As they took him back to the squad car, he again went completely limp, slumped in his wheel chair, and refused requests to sit up. Officer Truesdale asked another officer for permission to use his squad car because it had a full bench seat. Officer Truesdal's vehicle did not have a full bench and it would not have allowed the Plaintiff to lie down.

The officers had to lift the Plaintiff's limp body out of the wheel chair to get him in the squad car because he would not do it himself and would not aid the officers in the task. Officer Truesdale lifted the Plaintiff's shoulders and Officer Deshaies lifted his feet and legs. When the officers laid the Plaintiff across the bench seat in the squad car there was enough room left on both ends of the bench to close the doors without hitting the Plaintiff's head or his feet.

During the one-half-mile, one and one-half-minute-drive to lock-up, the Plaintiff sat up in the back seat. He did not complaint about Officer Truesdale's driving or of any injuries. But when they reached lock-up, the Plaintiff again went limp and had to be carried from the car to a

wheel chair. The officers then transferred custody of the Plaintiff to the jail staff.

## DISCUSSION

Section 1983 is not a source of substantive rights but instead provides "a method for vindicating federal rights elsewhere conferred by those parts of the United States Constitution and federal statutes that it describes." *City of Monterrey v. Del Monte Dunes at Monterrey, Ltd.*, 526 U.S. 687, 749 n.9 (1999). To prevail on a claim under § 1983, a plaintiff must show that "(1) the defendant deprived the plaintiff of a right secured by the Constitution and laws of the United States, and (2) the defendant acted under color of state law." *J.H. Exrel Higgin v. Johnson*, 346 F.3d 788, 791 (7th Cir. 2003) (citing *Reed v. City of Chi.*, 77 F.3d 1049, 1051 (7th Cir. 1996)). The Plaintiff alleges that while the Defendant officers were acting under color of law, they violated his constitutional right under the Fourth Amendment. The parties do not dispute that the Defendant officers were acting under color of state law. However, they argue that the undisputed facts, even taken in a light most favorable to the Plaintiff, establish that they did not use excessive force to arrest and detain the Plaintiff on August 26, 2005. They submit that, not only were their actions reasonable, but they are entitled to qualified immunity under the Supreme Court's two-part test. *See Saucier v. Katz*, 533 U.S. 194 (2001) (setting forth two-part test to determine whether an individual officer is entitled to immunity from suit).

Pursuant to the doctrine of qualified immunity, even if the Defendants violated the Plaintiff's Fourth Amendment rights, they will be immune from suit if a reasonable officer could have believed that the conduct was constitutional in light of clearly established law and the information he possessed at the time. *Anderson v. Creighton*, 483 U.S. 635, 639 (1987); *Frazell*

7

*v. E.K. Flanigan*, 102 F.3d 877, 886 (7th Cir. 1996).

> The concern of the immunity inquiry is to acknowledge that reasonable mistakes can be made as to the legal constraints on particular police conduct. It is sometimes difficult for an officer to determine how the relevant legal doctrine, here excessive force, will apply to the factual situation the officer confronts. An officer might correctly perceive all of the relevant facts but have a mistaken understanding as to whether a particular amount of force is legal in those circumstances. If the officer's mistake as to what the law requires is reasonable, however, the officer is entitled to the immunity defense.

*Saucier v. Katz*, 533 U.S. 194, 205 (2001). "The police cannot have the specter of a § 1983 suit hanging over their heads . . . as long as their behavior falls within objectively reasonable limits." *Clash v. Beatty*, 77 F.3d 1045, 1048 (7th Cir. 1996).

The analysis of a qualified immunity defense requires a two-step inquiry. First, a court must answer the threshold question whether the alleged facts, taken in the light most favorable to the party asserting the injury, show that the officer's conduct violated a constitutional right. *Saucier*, 533 U.S. at 201. Second, assuming that a plaintiff is able to establish a constitutional violation under a favorable view of the facts, "the next, sequential step is to ask whether the right was clearly established." *Id.* In other words, a court must consider whether the law clearly established that the officer's conduct was unlawful in the circumstances of the case. *Id.* An officer will be entitled to qualified immunity unless both steps are answered in the affirmative. *Id.*

The Plaintiff cannot establish a constitutional violation, and his claims must be dismissed as a matter of law. *See Mannoia v. Farrow*, 476 F.3d 453, 457 (7th Cir. 2007) ("Although the privilege of qualified immunity is a defense, the plaintiff carries the burden of defeating it.").

8

**A.      Fourth Amendment—Excessive Force**

"[T]he Fourth Amendment prohibits the use of excessive force during the execution of a seizure." *Jacobs v. City of Chi.*, 215 F.3d 758, 773 (7th Cir. 2000). When officers' actions are "'objectively reasonable' in light of the facts and circumstances confronting them," from the perspective of a reasonable officer, the officers' actions do not constitute excessive force. *Graham v. Connor*, 490 U.S. 386, 397 (1989). "The 'reasonableness' of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Id.*  The "calculus of reasonableness must embody allowance for the fact that police officers are often forced to make split-second judgments—in circumstances that are tense, uncertain, and rapidly evolving—about the amount of force that is necessary in a particular situation." *Graham*, 490 U.S. at 396–97. "Determining whether the force used to effect a particular seizure is 'reasonable' under the Fourth Amendment requires a careful balancing of 'the nature and quality of the intrusion on the individual's Fourth Amendment interests' against the countervailing governmental interests at stake." *Id.* at 396 (quoting *Tennessee v. Garner*, 471 U.S. 1, 8 (1985)). A court must look to the following factors when determining whether the amount of force used is reasonable: "the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Payne v. Pauley*, 337 F.3d 767, 778 (7th Cir. 2003).

An officer who fails to prevent other law enforcement officers from violating the constitutional rights of citizens can be held liable under § 1983 if that officer had reason to know: "(1) that excessive force was being used, (2) that a citizen has been unjustifiably arrested,

9

or (3) that any constitutional violation has been committed by a law enforcement official; and the officer had a realistic opportunity to intervene to prevent the harm from occurring." *Chavez v. Ill. State Police*, 251 F.3d 612, 652 (7th Cir. 2001). "In order for there to be a failure to intervene, it logically follows that there must exist an underlying constitutional violation." *Harper v. Albert*, 400 F.3d 1052, 1064 (7th Cir. 2005). "[A] 'realistic opportunity to intervene' may exist whenever an officer could have 'called for a backup, called for help, or at least cautioned [the excessive force defendant] to stop.'" *Abdullahi v. City of Madison*, 423 F.3d 763, 774 (7th Cir. 2005) (quoting *Yang v. Hardin*, 37 F.3d 282 (7th Cir. 1994)).

Here, the Plaintiff has not presented any evidence to call into question the testimony of the officers regarding the events of August 26, 2005. The Plaintiff has only the bare allegations of his Complaint. But "the facts alleged in [the] complaint have little relevance at the summary judgment stage." *United Ass'n of Black Landscapers v. City of Milwaukee*, 916 F.2d 1261, 1265 (7th Cir. 1990) (noting that facts in complaint cannot create disputed issues of material fact because the plaintiff "must go a step further and make a specific, supportable showing to defeat a motion for summary judgment"). The undisputed evidence is that the Plaintiff was impaired and uncooperative and that the Defendants took only the action that was necessary to control the initial scene, get the Plaintiff into a squad car, and transport him to lock-up—both from the initial stop scene and from the hospital. There is no evidence that they were rough in their treatment of him, hit or struck him, unnecessarily applied handcuffs, drove recklessly, or otherwise used force. Under the totality of circumstances, the Defendants treatment of the Plaintiff did not amount to excessive force.

10

**B.      Clearly Established Right**

The undisputed facts before this Court support the conclusion that the Defendants' actions were a reasonable and justified response to the situation and that no reasonable jury could find for the Plaintiff. Thus, the Court is not required to conduct any further qualified immunity analysis, and Officers Truesdale and Deshairs are entitled to summary judgment. *See Saucier*, 533 U.S. at 201 (stating that if "no constitutional right would have been violated were the allegation established, there is no necessity for further inquiries concerning qualified immunity").

**CONCLUSION**

For the foregoing reasons, the Court GRANTS the Motion for Summary Judgment [DE 33] filed by Defendants Truesdale and Deshaies. Judgment will be entered in favor of the Defendants and against the Plaintiff.

SO ORDERED on March 28, 2008.

 s/ Theresa L. Springmann
THERESA L. SPRINGMANN
UNITED STATES DISTRICT COURT

11